IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JEFFREY YATES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 19-cv-362-SMY |
| | ) |
| DR. RALPH JOHNNIE, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge**

Plaintiff Jeffery Yates filed the instant § 1983 lawsuit against Defendant Dr. Ralph Johnnie ("Dr. Johnnie") on April 1, 2019 (Doc. 1). Yates claims that Dr. Johnnie's refusal to treat tooth pain and swollen gums for two years was deliberately indifferent in violation of the Eighth Amendment and caused him harm, including two teeth extractions.

Now pending before the Court is Defendant Dr. Ralph Johnnie's Motion for Summary Judgment (Doc. 34) and Plaintiff's responses (Docs. 39, 40, 41). For the following reasons, the motion is **GRANTED**.

### Factual Background

The following relevant facts are undisputed: Yates has been an inmate at the Illinois Department of Corrections' Centralia Correctional Center since 2009 (Doc. 35-1 at 14). He has received yearly teeth cleanings from dental hygienists and a yearly dental exam from Dr. Johnnie since arriving at Centralia. *Id.* at 18, 19, 21.

Wexford Health Services, Inc. employed Dr. Johnnie as a dentist in correctional centers in Illinois from 1980 until his retirement on March 30, 2020 (Doc 35-2 at 1). He was the primary

provider of dentistry at Centralia and administered dental care including biennial examinations of each inmate. *Id.* If dental surgery was required, Dr. Johnnie submitted requests to send inmates to an offsite oral surgeon. *Id.*

Yates' problems with his gums began in the summer of 2016. Doc. 35-1 at 25-26. When he received his annual dental cleaning from a dental hygienist on March 1, 2016, she indicated that his gums were irritated (Doc. 35-2 at 2; Doc. 35-3 at 85). Dr. Johnnie did not note that Yates required any further dental treatment at that time (Doc. 35-2 at 2; Doc. 35-3 at 85). Yates noticed bleeding and swelling in his gums and put in a request to see Dr. Johnnie (Doc. 35-1 at 27-28). At a December 7, 2016 appointment, Dr. Johnnie examined tooth #18, the rearmost molar in the left lower jaw, but found no problems at the time (Doc. 35-2 at 2; Doc. 35-3 at 85). He suggested that Yates' gums were irritated because he was brushing too hard and advised him to brush more lightly and to use Sensodyne toothpaste (Doc. 35-1 at 28-29). Yates followed this advice and had some pain relief for a period. *Id.* at 29.

Yates received his annual cleaning and exam in March 2017; no issues are noted in his medical record for that visit. *Id.* at 30; Doc. 35-3 at 85.[1] Dr. Johnnie next examined Yates on November 9, 2017 because Yates lost a filling. *Id.* at 32-33; Doc. 35-2 at 2-3; Doc. 35-3 at 85. According to the medical record, Yates made no mention of experiencing any dental pain (Doc. 35-2 at 2; Doc. 35-3 at 85).

When Yates attended his March 2018 biennial appointment, Dr. Johnnie noticed that his tooth requiring a filling had not yet been replaced. He made an appointment for Yates to return (Doc. 35-2 at 3; Doc. 35-3 at 85). On April 10, 2018, Dr. Johnnie replaced the filling without complications. He did not note Yates making any complaint about tooth #17 or #18, any other

---

[1] Yates claims he requested an appointment with Dr. Johnnie "several times" regarding his pain and gums bleeding but could not provide dates for his requests (Doc. 35-1 at 31-32).

teeth, or his gums (Doc. 35-2 at 3; Doc. 35-3 at 85).

On July 2, 2018, Dr. Johnnie examined Yates' tooth #17 and found that this wisdom tooth, located in the rear of the left lower jaw, was impacting the molar at tooth #18 and that there was a mild infection around tooth #18 (Doc. 35-2 at 3; Doc. 35-3 at 85).[2] He prescribed Penicillin to control the infection and ordered Yates to be sent to an oral surgeon for consultation on removal of wisdom tooth #17 (Doc. 35-1 at 36-37, 45; Doc. 35-2 at 3-4; Doc. 35-3 at 85; Doc. 35-4 at 17). Six days later, Dr. Johnnie examined Yates before he was sent to an oral surgeon. He did not note any complaints of pain at the site of tooth #17 or #18 at that appointment (Doc. 35-2 at 4; Doc. 35-3 at 85).[3] Beginning mid to late July 2018, Dr. Johnnie left on medical leave for approximately six to eight weeks (Doc. 35-2 at 5).

On August 7, 2018, Yates was examined offsite by Dr. Ray Swanson, an oral surgeon, per Dr. Johnnie's request. *Id.*; Doc. 35-1 at 43-44; Doc. 35-4 at 17. Dr. Swanson concluded that Yates' wisdom tooth #17 required removal and performed a successful extraction surgery that day (Doc. 35-2 at 5; Doc. 35-4 at 17). He also found that the gums showed inflammation around the impacted tooth and were infected (Doc. 35-1 at 44; Doc. 35-2 at 5).[4] Dr. Swanson prescribed Penicillin and Motrin, which decreased the swelling and pain. However, the infection surrounding his molar tooth #18 eventually returned. *Id.* at 46-47; Doc. 35-3 at 21.

On August 10, 2018, Yates had a follow up appointment with Dr. Abdul Junidi who was covering for Dr. Johnnie (Doc. 35-1 at 47; Doc. 35-2 at 5). Dr. Junidi noted swelling on the left side of Yates' face. Yates later received new medication to treat his infection (Doc. 35-2 at 5-6;

---

[2] According to Yates, by July 2018, the pain and swelling in his mouth was so severe he could not eat and was causing earaches and headaches (Doc. 35-1 at 41, 44, 73).
[3] Yates testified that he did not remember much from that appointment, but that he was still in pain during that time (Doc. 35-1 at 42-43).
[4] According to Yates, Dr. Swanson told him that his wisdom tooth pressing against his back molar caused an infection (Doc. 35-1 at 46).

Doc. 35-3 at 26, 85, 95, 116).

On August 22, 2018, Dr. Junidi saw Yates and found that despite the medication, his face was still swollen, his gum tissue was not healing, and he could not completely close his mouth. Dr. Junidi made a referral to Dr. Swanson for a follow up appointment (Doc. 35-2 at 6; Doc. 35-3 at 87). Yates saw Dr. Swanson the next day. He diagnosed facial cellulitis and recommended a change in Yates' prescribed antibiotics (Doc. 35-2 at 6; Doc. 35-4 at 16). The third change in medication decreased Yates' swelling and pain level (Doc. 35-1 at 53-54). Dr. Swanson saw Yates the next day and removed tooth #18. *Id.* at 51; Doc. 35-2 at 7; Doc. 35-4 at 18.

On August 27, 2018, Dr. Johnnie saw Yates for a follow up appointment (Doc. 35-1 at 55; Doc. 35-2 at 7; Doc. 35-3 at 87). He observed very little swelling but noted that Yates could not fully open his mouth (Doc. 35-2 at 7). Yates saw Dr. Swanson the next day for an evaluation and he again recommended a change in medication. *Id.* at 7-8; Doc. 35-4 at 19. On August 30, 2018, Yates attended another follow up appointment with Dr. Johnnie who noted the surgical site looked good, there was no swelling or draining visible, and Yates reported no pain at the surgical site (Doc. 35-1 at 56; Doc. 35-2 at 8; Doc. 35-3 at 87).

Yates saw Dr. Swanson for a fifth time on September 6, 2018. Dr. Swanson concluded that the surgical sites were healing as expected and that Yates could return as needed in the future (Doc. 35-1 at 57; Doc. 35-2 at 8; Doc. 35-4 at 15).

Yates had a final follow up appointment with Dr. Johnnie on September 29, 2018. At that time, Dr. Johnnie noted that Yates was healing well, that no further treatment was required, and that Yates should return for further care as needed (Doc. 35-2 at 8; Doc. 35-3 at 87).

**Discussion**

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue as to any material fact or where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50 (1986). Any doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Lawrence v. Kenosha County,* 391 F.3d 837, 841 (7th Cir. 2004).

Deliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment and is actionable under 42 U.S.C. § 1983. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). To succeed on such a claim, a plaintiff must establish that he suffered from an objectively serious medical condition and that the defendant was deliberately indifferent to a risk of serious harm from that condition. *Thomas v. Walton*, 461 F. Supp. 2d 786, 793 (S.D. Ill. 2006); *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996).

"A medical need is 'serious' if it is one that a physician has diagnosed as mandating treatment . . . and if untreated could result in further significant injury or unnecessary pain, and that significantly affects the person's daily activities or features chronic and substantial pain." *Wilson v. Vannatta,* 291 F.Supp.2d 811, 816 (N.D. Ind. 2003) (citing *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir.1997)). Here, there is no question that Yates suffered from a serious medical condition – an impacted wisdom tooth and a gum infection. *See e.g.*, *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir.2010) (holding that tooth decay can constitute an objectively serious medical condition). However, the evidence fails to support Yates' claim that Dr. Johnnie was deliberately

indifferent to his condition.

Yates asserts that he suffered chronic pain in his teeth and gums for two years before his teeth extraction and treatment in August 2018. He argues that despite his complaints of gum irritation around teeth #17 and #18, Dr. Johnnie failed to conduct a thorough examination during the December 7, 2016 appointment. And, he alleges this failure by Dr. Johnnie caused him unnecessary pain and suffering. In essence, Yates contends that the March 2016 and December 2016 appointments, standing alone, provided Dr. Johnnie with notice of his serious medical condition, but that he failed to act upon this knowledge for two years.

While Yates contends that between 2016 and 2018, his repeated complaints to Dr. Johnnie about his pain that fell on deaf ears, he has failed to produce evidence to support this contention. The relevant entries in the medical records are from March 2016 (gums irritated), December 2016 ("exam-checked #18, no problem noted"), March 2018 (filling replacement required), and July 2018 (impacted wisdom tooth) (Doc. 35-3 at 85). Yates did not produce any request slips to see Dr. Johnnie outside of his yearly cleaning and exam, and he could not recall any dates when he complained to Dr. Johnnie about pain. (Doc. 35-2 at 19, 32, 62-63). Dr. Johnnie attests that he never received any complaint regarding teeth #17 and #18 or their surrounding gums from Yates between December 2016 and July 2, 2018 (Doc. 35-2 at 9). In sum, although Yates had several appointments with Dr. Johnnie between 2016 and 2018, the record lacks evidence of reported pain other than during the December 7, 2016 appointment. Thus, Yates' allegation that Dr. Johnnie ignored his suffering is unsupportable on the record.

"A doctor might be careless in not appreciating the need to investigate several possible explanations for a particular prisoner's symptoms, and this carelessness may constitute malpractice. But malpractice alone is not enough to meet the constitutional standard." *Walker v.*

*Peters*, 233 F.3d 494, 499 (7th Cir. 2000). Yates also fails to establish that Dr. Johnnie's treatment deviated from accepted professional judgment, practice, or standard such that it amounts to deliberate indifference. Dr. Johnnie did not perceive any problem with teeth #17 or #18 or the surrounding gums/tissue during the December 7, 2016 appointment. He concluded that Yates was brushing his teeth too hard and advised Yates to change his brushing habits and switch to Sensodyne toothpaste. Yates acknowledges that these changes alleviated his pain for a period. Dr. Johnnie again did not perceive any problems with Yates' wisdom tooth or gums during his biennial exams in 2017 and 2018, and there is no evidence that tooth #17 was perceivably impacting tooth #18 until Dr. Johnnie diagnosed that condition on July 2, 2018.

Yates maintains that Dr. Swanson would testify that the gum infection occurred over a long period (Doc. 41 at 1-2). However, the record lacks an affidavit or deposition testimony from Dr. Swanson. "An inmate who complains that delay in medical treatment rose to a constitutional violation must place *verifying medical evidence* in the record to establish the detrimental effect of delay in medical treatment to succeed." *Langston v. Peters,* 100 F.3d 1235, 1240 (7th Cir.1996) (quoting *Beyerbach v. Sears,* 49 F.3d 1324, 1326 (8th Cir.1995)) (emphasis in original). Without evidence to the contrary, Yates' argument that Dr. Johnnie's December 2016 diagnosis deviated from professional standards is mere conjecture. The undisputed evidence is that when Dr. Johnnie found that tooth #17 was impacting tooth #18 and found signs of a mild infection in the surrounding tissue in July 2018, he properly prescribed Penicillin and immediately referred Yates to see an oral surgeon.

### Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgement (Doc. 34) is **GRANTED**. All pending motions are terminated as moot, and the Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:  August 11, 2021**

2021.08.11
14:16:04 -05'00'

**STACI M. YANDLE**
**United States District Judge**